**[Cite as *Portnoy v. Thryv Yellow Pages*, 2024-Ohio-5977.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Michael Portnoy

    Appellant

v.

Thryv Yellow Pages

    Appellee

Court of Appeals No. L-24-1023

Trial Court No. CI0202304382

**DECISION AND JUDGMENT**

Decided: December 20, 2024

* * * * *

Michael D. Portnoy, pro se.

R. Samuel Gilley and Lauren M. Johnson, for appellee.

* * * * *

**DUHART, J.**

{¶ 1} This is an appeal by appellant, Michael Portnoy, from the judgment of the Lucas County Common Pleas Court, rendered January 19, 2024. For the reasons that follow, we affirm the trial court's judgment.

{¶ 2} Portnoy sets forth one assignment of error:

The Trial Court committed prejudicial error by dismissing Plaintiff's

complaint and requiring Plaintiff to arbitrate the case.

## Background

{¶ 3} In 2021, Portnoy and appellee, Thryv Yellow Pages ("Thryv"), entered into two Services Agreements ("the agreements") for Thryv to provide advertisement for Portnoy's law firm.

{¶ 4} On December 18, 2023, Portnoy filed a complaint and class action[1] with jury demand against Thryv, alleging RICO violations and breach of contract/fraud.

{¶ 5} On January 4, 2024, Thryv filed a motion to compel arbitration asserting each of the agreements contained an arbitration clause. Thryv argued the claims asserted in Portnoy's complaint, for RICO and fraud relating to Thryv's billing practices, fall within the scope of the arbitration clauses. Thryv sought an order dismissing, or staying, the complaint and ordering Portnoy to submit his claims to binding arbitration on an individual basis.

{¶ 6} On January 11, 2024, Portnoy filed an opposition to the motion arguing Thryv waived the right to arbitration by acting inconsistently with that right by contacting Portnoy and demanding payment for money that Portnoy allegedly owed under the agreements, and by failing to purse legal remedies. Portnoy also asserted the arbitration clauses in the agreements were unenforceable because they were procedurally unconscionable.

{¶ 7} On January 17, 2024, Thryv filed a reply claiming it acted consistently with and did not waive its right to arbitrate, as it did not actively participate in a lawsuit.

---

[1] We recognize Portnoy filed a class action, but for purposes of this opinion, we will refer to Portnoy individually, and not the purported class members.

2.

Thryv argued the arbitration clauses were enforceable, as Portnoy had to prove the clauses were procedurally and substantively unconscionable, and Portnoy only alluded to the clauses being procedurally unconscionable but did not provide any factual basis in support. Thryv further asserted that Portnoy was an attorney who voluntarily entered into the agreements.

{¶ 8} On January 19, 2024, the trial court granted Thryv's motion to compel arbitration and dismissed Portnoy's complaint. Portnoy appealed.

**The Agreements**

{¶ 9} The agreements both contain the following relevant language:

Client Business Name: Portnoy Michael D.

. . .

1. Definitions:

a. "You" or "the Business" or "Client" means the individual or business entity listed in the Order section of your Services Agreement.

b. "We," "us," "our," or "Thryv" means Thryv[.]

. . .

10. Our Remedies. If you do not pay all charges by 30 days after the due date, fail to meet any other obligation under this Agreement or under any other agreement between us, or make any Client Representation or warranty that is or becomes untrue, we may, without notice: (i) require you to pay immediately all unpaid amounts you owe and will owe for all Services for this Agreement; (ii) remove your Print Services from any publication that has not published; (iii) remove, suspend, or modify your Digital Services; (iv) suspend or terminate any Service without liability; (v) recover all collection costs and attorney fees; (vi) redirect to another company (possibly a competitor) or permanently or temporarily disconnect the unique tracking telephone numbers appearing in your Service; and (vii) pursue any other available legal or equitable remedies[.]

. . .

19. Waiver of Class Action and Jury Trial and Consent to Binding Arbitration. In any legal proceeding relating to this Agreement, the parties agree to waive any right they may have to participate in any class, group, or representative proceeding and to waive any right they may have to a trial by jury. **Any claim, controversy, or dispute that arises under or relates to this Agreement (other than claims to collect amounts you owe), including any dispute regarding any Listing or Service, any omissions, incorrect phone numbers or other errors, and any Service placement concerns, shall be referred by the aggrieved party to binding arbitration** under the Commercial Rules of the American Arbitration Association. The arbitration shall occur in Dallas County, Texas unless we mutually agree to another location. All Digital Ads and/or Services shall be deemed to have been provided in Texas. The arbitration hearing shall be held within 6 months after the filing of the arbitration demand with the AAA. (Emphasis added.)

### Portnoy's Complaint

{¶ 10} In his complaint, Portney alleged, inter alia:

### Count One

. . .

11. Portnoy . . . entered into contracts with [Thryv] whereupon [Thryv] charged Portnoy . . . for Yellow Page advertisements . . . that were subsequently canceled.

12. Despite having actual knowledge that the Yellow Pages printed telephone advertisements had been canceled by Portnoy . . . , [Thyrv] fraudulently claimed that Portnoy . . . owed [Thryv] for the printed Yellow Pages printed advertisements per [his] contracts with [Thryv].
. . .

20. By using the mail and email to send notices to Portnoy . . . that [Thryv] has the legal right to charge for Yellow Page printed advertising after the contracts had been canceled, [Thryv] made material fraudulent misrepresentations concerning the status of the billing to be charged to Portnoy . . . in [his] contracts with [Thryv].
. . .

22. [Thryv] engaged in this fraudulent enterprise through a pattern of racketeering activity by scheming to convince Portnoy . . . [of] the need to

pay [Thryv] a billing rate that was false. [Thryv] financially benefited from this pattern of fraud to Portnoy[’s] . . . detriment causing damages[.]

<u>Count Two</u>

. . .

24. Portnoy . . . entered into contracts with [Thryv] for advertisement services that [Thryv] claimed existed.

25. [Thryv] made material misrepresentations to Portnoy . . . that the advertisement services in the printed Yellow Page printed advertisements could be charged to Portnoy . . . when this was false.

26. By making fraudulent material misrepresentations to Portnoy . . . that [Thryv] intended Portnoy . . . to rely upon as true and accurate. [Thryv] committed common law fraud . . . by charging . . . for advertisement services . . . when this was illegal.

27. As a result of [Thryv’s] material misrepresentations to Portnoy . . . concerning the billing rates to be charged for advertisement in the printed Yellow Pages, [Thryv] acted arbitrar[il]y, capriciously and fraudulently, causing damages to Portnoy[.]

**Assignment of Error**

{¶ 11} Portnoy argues the right to arbitration can be waived, and to prove waiver, the party opposing arbitration must demonstrate that the party requesting arbitration knew of the existing right of arbitration and acted inconsistently with that right. Portney contends in order to determine whether the requesting party acted inconsistently with the right to arbitrate, courts have considered the totality of the circumstances, including any delay in making the demand to arbitrate by filing a motion to stay the proceedings pending arbitration and whether the party opposing arbitration has been prejudiced by the

party requesting arbitration. Portnoy cites to several cases in support of his arguments:[2] *Naylor Family Partnership v. Home S. & L. Co. of Youngstown*, 2014-Ohio-2704, ¶ 18 (11th Dist.); *Hogan v. Cincinnati Fin. Corp.*, 2004-Ohio-3331, ¶ 23 (11th Dist.); *Glenmoore Builders, Inc. v. Kennedy*, 2001-Ohio-8777 (11th Dist.); and *Dispatch Printing Co. v. Recovery Ltd. Partnership*, 2011-Ohio-80 (10th Dist.).

{¶ 12} Portnoy asserts "[d]espite the unambiguously written agreement language precluding arbitration related to amounts [he] allegedly owed . . . [Thryv] argued arbitration applies to the claims and [it] had not waived arbitration, despite its written agreement language excluding arbitration for alleged amounts owed by [Portnoy]." He argues that Thryv acted inconsistently with its own contractual language by demanding arbitration when no such right existed, and Thryv waived the right to demand arbitration for any claims regarding disputed amounts of money owed. He submits Thryv never filed suit against him to attempt to recover the alleged money owed, instead, Thryv's representatives harassed Portnoy, by telephone and mail, to pay the disputed amounts. Portnoy contends that in order to stop the harassment, he filed suit against Thryv.

## Standard of Review

{¶ 13} An appeal from a motion to dismiss and compel arbitration which presents a question of law is reviewed de novo. *Newton v. U.S. Bancorp Invests., Inc.*, 2023-

---

[2] None of the cases cited in Portnoy's brief comply with Sixth Dist.Loc.R. 10(C), which rule provides, inter alia, that "[c]itations shall conform to the Writing Manual A Guide to Citations, Style, and Judicial Opinion Writing issued by the Supreme Court of Ohio (2013)." We note a new edition of the writing manual became effective June 17, 2024. We have provided the correct citations, in accordance with the latest writing manual.

6.

Ohio-1450, ¶ 12 (10th Dist.).  Whether a particular claim is arbitrable is a question of law for the court to decide.  *Id.*, citing *Academy of Medicine of Cincinnati v. Aetna Health, Inc.*, 2006-Ohio-657, ¶ 5.

## Law

{¶ 14} In order to determine whether a dispute falls within the arbitration provision of a contract, the court must first look at the language of the arbitration provision.  *Alexander v. Wells Fargo Financial Ohio 1, Inc.*, 2009-Ohio-2962, ¶ 9.  Any doubts should be construed in favor of arbitration.  *Hayes v. Oakridge Home*, 2009-Ohio-2054, ¶ 15, citing *Ignazio v. Clear Channel Broadcasting, Inc.*, 2007-Ohio-1947, ¶ 18.

{¶ 15} A method of analysis is to ask if the cause of action could be maintained without reference to the contract, and if it could, the cause of action is likely outside of the scope of the arbitration provision in the contract.  *Alexander* at ¶ 24.

{¶ 16} With respect to waiving the right to arbitrate by acting inconsistently with that right, active participation in a lawsuit and the failure to seek arbitration in a timely manner are evidence of acquiescence to proceed in a judicial rather than an arbitration forum.  *Naylor*, 2014-Ohio-2704 at ¶ 18 (11th Dist.).  Another circumstance which may be considered is whether the non-requesting party was prejudiced by the requesting party's inconsistent acts.  *Glenmoore Builders*, 2001-Ohio-8777 at *4 (11th Dist.).

## Analysis

{¶ 17} Upon review, the allegations in the first count of Portnoy's complaint are that Portnoy entered into contracts for advertisements with Thryv, he subsequently canceled the advertising, but Thryv fraudulently demanded that he owed for the

7.

advertisements. Portnoy characterized Thryv's actions as engaging in a pattern of racketeering activity, RICO, by scheming to convince Portnoy to pay false billing rates. In the second count of the complaint, Portnoy alleged he entered into contracts with Thryv and Thryv made fraudulent material misrepresentations by charging for advertisement services when this was illegal.

{¶ 18} The arbitration clauses in the agreements state, in relevant part, that "[a]ny claim, controversy, or dispute that arises under or relates to this Agreement (other than claims to collect amounts you owe), including any dispute regarding any Listing or Service, any omissions . . . shall be referred by the aggrieved party to binding arbitration[.]"

{¶ 19} We find that the terms of the agreements are central to the allegations in Portnoy's complaint, as his controversy with Thryv relates to and arise out of the agreements. Thus, Portnoy's cause of action could not be maintained without reference to the agreements. Moreover, the arbitration clauses encompass all disputes under the agreements except for claims by Thryv to collect amounts Portnoy owes. Portnoy's complaint against Thryv alleges RICO violations and fraud with respect to Thryv's billing practices for its advertising services. Since the causes of action do not involve Thryv pursing arbitration for claims to collect money from Portney, we find Portnoy's claims fall under the arbitration clauses.

{¶ 20} As to Portnoy's contention that Thryv waived the right to demand arbitration for any claims regarding disputed amounts of money owed and acted inconsistently with its own contractual language when it had its representatives harass

8.

Portnoy by phone and mail to pay a disputed amount, we find Portnoy failed to demonstrate that Thryv acted inconsistently with the right to arbitrate. Considering the totality of the circumstances, we find that Thryv's participation in the litigation was limited to filing its motion to compel arbitration, which it did without delay, as the motion was filed about three weeks after Portnoy filed his complaint. *See Naylor*, 2014-Ohio-2704 (11th Dist.). As such, we find that Thryv did not waive its right to arbitrate.

{¶ 21} Based upon the foregoing, we find the trial court did not err by dismissing Portnoy's complaint and requiring Portnoy to arbitrate the case. Accordingly, Portnoy's sole assigned error is not well-taken.

{¶ 22} On consideration whereof, the judgment of the Lucas County Court of Common Pleas is affirmed. It is ordered that Portnoy pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Christine E. Mayle, J.         _____
                                                  JUDGE
Gene A. Zmuda, J.        

Myron C. Duhart, J.         _____
CONCUR.                                                 JUDGE

_____
                                                  JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.